UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AL P. WILLIAMS,

        *Plaintiff*,

v.

FORT MYER CONSTRUCTION
CORPORATION,

        *Defendant*.

No. 23-cv-3466 (DLF)

## MEMORANDUM OPINION AND ORDER

Al Williams brings this employment action against his former employer, Fort Myer Construction Corporation (Fort Myer). Before the Court is Williams's Motion for Summary Judgment, Dkt. 37, and Fort Myer's Motion to Amend Answer, Dkt. 39. For the reasons that follow, the Court will deny Williams's motion and grant Fort Myer's motion.

### I.  BACKGROUND

In March 2022, Williams was hired by construction company Fort Myer. Pl.'s Aff. in Supp. of Mot. Summ. J. (Pl.'s Aff.) ¶ 2, Dkt. 37-3; Def.'s Statement of Genuine Issues and Disputed Facts (Def.'s SOF) ¶¶ 1–2, Dkt. 40-1. Williams claims that he was hired as "Sedrick Battle's office assistant," rather than as a laborer, because Battle knew that Williams had been experiencing seizures for approximately two years. *See* Pl.'s Aff. ¶ 3. According to Fort Myer, Williams "held the title of skilled laborer" and "never held the position of administrative assistant." Def.'s SOF ¶ 3; *see* Def.'s Ex. D (Employment Contract), at 1, Dkt. 40-4; Def.'s Ex. F (Payroll Screenshot), at 1, Dkt. 40-6.

Whatever his official role, Williams's responsibilities at Fort Myer included office work and fieldwork on construction sites, where he performed tasks such as "line taping." Def.'s SOF ¶ 6; Pl.'s Aff. ¶ 7. Williams notes that his position "involved minimal driving" between the office and work sites. Pl.'s Aff. ¶ 7. Fort Myer, for its part, claims that "driving was a critical, indispensable component of [Williams's] job." Def.'s SOF ¶ 7; *see* Battle Aff. ¶¶ 7, 12, Dkt. 40-3.

In November 2022, Williams was hospitalized and diagnosed with "intractable epilepsy." Pl.'s Aff. ¶ 10; *see generally* Pl.'s Ex. 5 (Letters from Dr. Malla), Dkt. 37-8. As part of that diagnosis, Williams's doctor restricted him from "driving" and "working with heavy machinery." Letters from Dr. Malla at 3. When Williams returned to work, the general superintendent instructed him to obtain a doctor's note. *See* Pl.'s Aff. ¶ 13; Def.'s SOF ¶ 9; Battle Aff. ¶ 11. When Williams informed Battle that he had been diagnosed with epilepsy and could no longer drive, Battle directed Williams to Human Resources. *See* Def.'s SOF ¶ 10; Battle Aff. ¶ 11; *see also* Pl.'s Aff. ¶ 15. Williams alleges that, when he presented a doctor's note describing his "diagnosis, request for reasonable accommodations, and authorization to work," Human Resources "told [him] to go home and to await a response." Pl.'s Aff. ¶ 15. According to Fort Myer, Williams told Human Resources only that "he was suffering from headaches" and did not provide his doctor's note until February 2024. Def.'s SOF ¶¶ 10–13; *see* Def.'s Ex. B (Page Aff.), ¶¶ 5, 8–9, Dkt. 40-2.

In December 2022, Williams asked Human Resources "if there was any progress with [his] issue and how [he] could possibly be accommodated at Fort Myer." Pl.'s Aff. ¶ 18; *see* Pl.'s Ex. 4 (Emails Between Williams and Fort Myer), at 5, Dkt. 37-7. Williams alleges that Human Resources told him to apply for "paid leave benefits," "short[-]term disability benefits," and

2

"unemployment benefits," and informed him that he would be "terminated" after being on paid leave. Pl.'s Aff. ¶ 21. Fort Myer maintains that Human Resources "advised Williams of his right to apply for D.C. medical paid leave" in November 2022 "[a]s a matter of routine." Def.'s SOF ¶¶ 10–11; *see* Page Aff. ¶¶ 5–6. In any event, Williams applied for and was granted paid leave until January 27, 2023. Pl.'s Aff. ¶¶ 27–28; *see* Page Aff. ¶¶ 5–7. On January 31, 2023, Fort Myer laid off Williams due to lack of work that the company attributed to the seasonal nature of its business. *See* Def.'s SOF ¶ 14; Def.'s Ex. G (Separation Information), at 1, Dkt. 40-7 ("We are a construction company and during this time hours decrease."); Page Aff. ¶ 13 ("FMCC was entering the winter months when FMCC's work was reduced substantially due to the cold weather."); Pl.'s Aff. ¶ 29.

On September 28, 2023, Williams filed this lawsuit in the Superior Court of the District of Columbia. Notice of Removal ¶ 1, Dkt. 1. Two months later, Fort Myer removed the case to federal court. *See generally* Notice of Removal. Williams's operative complaint alleges violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq.*, the D.C. Human Rights Act (DCHRA), D.C. Code § 2-1401.01 *et seq.*, and the federal and D.C. Family and Medical Leave Acts, 29 U.S.C. § 2601 *et seq.*; D.C. Code § 32-501 *et seq. See generally* Fourth Am. Compl., Dkt. 32. In October 2024, Williams moved for summary judgment on his ADA and DCHRA failure to accommodate claims. *See* Pl.'s Mot. for Summ. J., Dkt. 37; Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. (Pl.'s Mem.) 5–16, Dkt. 37-1. Fort Myer opposed Williams's motion, *see* Def.'s Opp'n, Dkt. 40, and simultaneously moved to amend its answer to add an affirmative defense, Def.'s Mot. to Amend Answer, Dkt. 39.

## II.   LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

Rule 15(a) instructs that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). To evaluate a motion to amend, the Court considers the *Foman* factors: "(1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the [party] has previously amended the [pleading]." *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). "'Although the grant or denial of leave to amend is committed to a district court's sound discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason,' such as the [*Foman*] factors." *Shea v. Clinton*, 288 F.R.D. 1, 4 (D.D.C. 2012) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). The party opposing the amendment "bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

4

### III. ANALYSIS

#### A. Failure to Accommodate

To prevail on a failure to accommodate claim under the ADA or DCHRA, a plaintiff must show that (1) he was a qualified individual with a disability; (2) the employer had notice of his disability; and (3) the employer denied his request for a reasonable accommodation. *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1371 (D.C. Cir. 2020); *see Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 153 (D.D.C. 2013) (same standard applies to ADA and DCHRA failure to accommodate claims). As to the first element, an individual is "qualified" if he "can perform the essential functions" of his employment "with or without reasonable accommodation." 42 U.S.C. § 12111(8). If a plaintiff cannot perform his work unaccommodated, he must show that "with a reasonable accommodation . . . he can perform the essential functions of the job." *Saunders v. Galliher & Huguely Assocs., Inc.*, 741 F. Supp. 2d 245, 248 (D.D.C. 2010) (citing *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999)). Under EEOC regulations, "[t]he term essential functions means the fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1) (emphasis omitted). "In determining whether a function is essential to a particular position," the Court grants the employer "substantial deference." *McNair v. District of Columbia*, 11 F. Supp. 3d 10, 15 (D.D.C. 2014). Evidence of a function's essentiality includes "[t]he employer's judgment as to which functions are essential," 29 C.F.R. § 1630.2(n)(3)(i), and "[w]ritten job descriptions," *id.* § 1630.2(n)(3)(ii).

The record before the Court reflects a genuine dispute as to whether Williams was qualified to perform the essential functions of his employment position. The parties disagree on two fundamental issues: the nature of Williams's role and, in turn, the essential functions thereof.

5

Williams claims that he was a qualified individual because he was employed as an administrative assistant and could still perform his administrative duties under an accommodation to be excused from driving. Pl.'s Mem. 10–13. To support this claim, Williams describes his employment as an administrative assistant in an affidavit, *see* Pl.'s Aff. ¶¶ 2–3, and provides text messages that show that he performed some administrative tasks for Battle, *see* Pl.'s Mem. 12; *see generally* Pl.'s Ex. 8 (Text Messages Between Battle and Williams), Dkt. 37-11. Williams admits that his position involved "minimal driving [to] get to the construction or work site location from the office," which he ceased once "diagnosed with epilepsy and restricted from driving." Pl.'s Aff. ¶ 7. Still, he argues that he "was fully capable of performing his administrative assistant job except the occasional driving it required," Pl.'s Mem. 2; *see* Pl.'s Aff. ¶¶ 7, 15, 23, and that other Fort Myer employees could have driven him to job sites "when needed," Pl.'s Aff. ¶ 23.

Fort Myer disagrees with Williams's account. In its opposition, Fort Myer provides documentation showing that it employed Williams as a "skilled laborer," and not as an administrative assistant. Employment Contract at 1 (citation modified); *see* Payroll Screenshot at 1. Fort Myer also points to an affidavit from Battle stating that, although Williams assisted with some in-office tasks, his job mostly took place "in the field" and required him to drive to work sites daily. Battle Aff. ¶ 7; *see* Def.'s Opp'n 3–4, 7; Def.'s SOF ¶ 6. Fort Myer further notes that its written job description for a "Skilled Laborer – Asphalt Screedman" states that the employee "[m]ust have a valid driver's license with a clean driving record." Def.'s Ex. E (Job Description), at 1, Dkt. 40-5; *see* Def.'s Opp'n 3, 7; 29 C.F.R. § 1630.2(n)(3)(ii).[1] As such, Fort Myer asserts

---

[1] In his reply, Williams offers a different description for a "Skilled Laborer – Asphalt" that states that a "[v]alid driver's license [is] preferred." Pl.'s Ex. 2 (Job Description), at 1, Dkt. 41-2; *see* Pl.'s Reply 23 n.8, Dkt. 41. But because Williams's employment contract specifies only that Williams held the "position of [a] full-time Skilled Laborer," it is not clear which job description is more accurate. Employment Contract at 1.

6

that "driving was a critical, indispensable component of [Williams's] job" as a skilled laborer. Def.'s Opp'n 3; *see id.* at 7.

The record thus reflects two fundamental disagreements: (1) whether Williams was employed as an administrative assistant or as a skilled laborer; and (2) whether driving was an essential function of Williams's employment. Both disputes materially affect whether Williams could have "perform[ed] the essential functions of the employment position" under a reasonable accommodation to be excused from driving. 42 U.S.C. § 12111(8). By providing Battle's affidavit, a written job description, and Williams's employment status and payroll information, Fort Myer has discharged its duty of coming forward with evidence from which a reasonable jury could find that driving was an essential function of Williams's job. *Solomon v. Vilsack*, 763 F.3d 1, 12 (D.C. Cir. 2014). Drawing "all reasonable inferences" in Fort Myer's favor, a jury could find that Williams was hired as a skilled laborer and not as an administrative assistant. *Reeves*, 530 U.S. at 150. And in light of the "substantial deference" the Court grants the employer in determining whether a function is essential, *McNair*, 11 F. Supp. 3d at 15, a jury could also find that driving was an essential function of Williams's employment and that Williams could not perform that function under his requested accommodations. Because there remains "at least one genuine issue of material fact" as to whether Williams was qualified, the Court will deny Williams's motion for summary judgment. *Muhammad v. Wash. Metro. Area Transit Auth.*, 319 F. Supp. 3d 440, 442 (D.D.C. 2018).

B. **Leave to Amend Answer**

Fort Myer seeks to amend its answer under Rule 15(a) to include an affirmative defense of undue hardship. *See* 29 CFR § 1630.15(d) ("It may be a defense . . . that a requested or necessary accommodation would impose an undue hardship on the operation of the covered entity's

7

business."); *see generally* Def.'s Mot. to Amend Answer.  Williams argues that the Court should deny the motion pursuant to the *Foman* factors of undue delay, prejudice, futility, bad faith, and whether the party has previously amended its pleading.  Pl.'s Opp'n 2, Dkt. 42.  The Court disagrees.[2]

Fort Myer's amendment would not cause undue delay.  Because the Court did not consider Fort Myer's proposed affirmative defense in deciding Williams's summary judgment motion, *see supra* Section III.A, Fort Myer's motion has "not be[en] used to defeat or delay summary judgment," Pl.'s Opp'n 3.  It is also "unlikely that the addition of this [defense] will significantly complicate or lengthen the [litigation]," *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006), as the question whether Fort Myer faced undue hardship in providing Williams's requested accommodation is inextricably linked to the ongoing dispute over whether Williams was employed as an administrative assistant or as a skilled laborer, *see* Def.'s Opp'n 8 ("Manufacturing an administrative job for a skilled laborer . . . would impose undue financial and administrative burdens." (citation modified)); Pl.'s Mem. 11 n.4 ("[Fort Myer] had already been [accommodating Williams in his role as an administrative assistant] for approximately six months.").  Nor is Fort

---

[2] The D.C. Circuit has not addressed whether Rule 15's liberal standard or Rule 16's good cause standard applies to circumstances where, as here, a party moves to amend a pleading after the scheduling order deadline for amendment has passed.  *See Headfirst Baseball LLC v. Elwood*, 206 F. Supp. 3d 148, 151–52 (D.D.C. 2016); *see also* Minute Order of June 12, 2024 ("[O]n or before June 22, 2024, any motions to amend pleadings shall be filed."); Def.'s Mot. to Amend Answer 4 (served on November 13, 2024).  *Compare* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."), *with* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  The parties, however, appear to agree that Rule 15 and the *Foman* factors provide the relevant legal standards for their dispute.  *See* Def.'s Mot. to Amend Answer ¶ 11; Pl.'s Opp'n 2 & n.1.  The Court therefore assumes that Rule 15 is the correct standard for the purposes of resolving Fort Myer's motion to amend.  *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428–29 (D.C. Cir. 2014) (affirming district court's holding that "the plaintiff waived Rule 26(e) because he did not raise the argument in his opposition to the defendant's motion to strike" (citation modified)).

Myer seeking to add any "new factual allegations." *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999); *see* Def.'s Mot. to Amend Answer ¶ 8. Rather, Fort Myer's amendment is more consistent with a "technical correction[]," for which "delay, without a showing of prejudice, is not a sufficient ground for den[ial]." *Harrison*, 174 F.3d at 253. And, even if the amendment represents a change in legal theory, Fort Myer "is not bound by the legal theory on which [it] originally relied" unless Williams is "prejudiced on the merits by [that] change." *Id.* (citation modified).

     Fort Myer's amendment would not unduly prejudice Williams. Williams had notice of an undue hardship defense—he preemptively rebutted the defense in his complaint, *see* Fourth Am. Compl. ¶ 36, and argued against the merits of the defense in his summary judgment motion, *see* Pl.'s Mem. 11 n.4; *cf. Lenkiewicz v. Castro*, 145 F. Supp. 3d 140, 142, 147–49 (D.D.C. 2015) (allowing the defendant to amend its answer to add an undue hardship defense where the plaintiff "fully argued against the merits" of the defense in its summary judgment briefing). Williams objects that it is prejudicial to introduce an affirmative defense after the close of discovery. Pl.'s Opp'n 7–8. But, to the extent that Williams is prejudiced by the amendment due to a lack of further discovery, the Court may grant a limited re-opening of discovery upon request. *See Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 79 (D.D.C. 2009) ("[A]ny potential prejudice would be ameliorated by supplemental discovery related to, what it characterizes as, [the party's] 'new' claims.").[3]

---

[3] Considering that, even prior to Fort Myer's motion to amend, Williams requested to conduct a deposition of Battle "after discovery closed," Pl.'s Opp'n 5 n.2, such an extension of discovery would assist—and not prejudice—Williams.

Neither is Fort Myer's amendment futile. For a complaint, amendment is futile "if the proposed claim would not survive a motion to dismiss." *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012). To survive a motion to dismiss, a plaintiff's complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But a defendant's answer need only "affirmatively state" an affirmative defense to satisfy Rule 8(c)'s pleading requirement. Fed. R. Civ. P. 8(c)(1); *see Paleteria La Michoacana v. Productos Lacteos*, 905 F. Supp. 2d 189, 190–93 (D.D.C. 2012); *Moore v. United States*, 318 F. Supp. 3d 188, 193 (D.D.C. 2018).[4] As is "common practice in this court," *Paleteria La Michoacana*, 905 F. Supp. 2d at 190, a singular sentence suffices, *see Moore*, 318 F. Supp. 3d at 193. Fort Myer's proposed amendment—"Fort Myer asserts that providing the requested accommodation of creating an administrative position for Plaintiff would have been unreasonable and would have created a significant financial and administrative burden by funding an unnecessary position and creating a fundamental alteration of Fort Myer's company structure," Def.'s Mot. to Amend Answer ¶ 8—meets that standard.

There is also no indication that Fort Myer acted in bad faith. Rather than showing that Fort Myer engaged in dilatory tactics, the record suggests that Fort Myer inadvertently omitted its affirmative defense. *See Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) ("An answer may be amended to include an inadvertently omitted affirmative defense."). Though Fort Myer failed to explicitly

---

[4] The D.C. Circuit has not yet identified the appropriate standard for determining whether an affirmative defense in an answer is futile under *Foman*. *United States v. All Assets Held at Bank Julius*, 229 F. Supp. 3d 62, 70–71 (D.D.C. 2017). Some courts in this district have concluded that it is not appropriate to apply the heightened plausibility pleading requirement to affirmative defenses. *See, e.g.*, *Paleteria La Michoacana*, 905 F. Supp. 2d at 190–93; *Moore*, 318 F. Supp. 3d at 193; *Malibu Media, LLC v. Parsons*, 12-cv-1331, 2013 WL 12324463, at *3 (D.D.C. May 31, 2013); *Taylor Energy Co. v. United States ex rel. U.S. Coast Guard Nat'l Pollution Funds Ctr.*, 20-cv-1086, 2020 WL 6075693, at *5 (D.D.C. Oct. 14, 2020). The Court agrees and applies the "traditional notice standard set by Rule 8(c)." *Moore*, 318 F. Supp. 3d at 193.

10

raise the affirmative defense of undue hardship in its first answer, as it had the burden to do, Fort Myer clearly denied Williams's allegation that "[t]he accommodation was reasonable and did not pose an undue hardship on the employer." Fourth Am. Compl. ¶ 36; *see* Ans. ¶¶ 36–39, Dkt. 34 ("The allegations contained in Paragraphs 36–39 of the Fourth Amended Complaint are denied."). Additionally, "[w]ith respect to bad faith, . . . delay alone is an insufficient ground to deny the motion unless it prejudices the opposing party." *United States ex rel. Scott v. Pac. Architects & Eng'rs (PAE), Inc.*, 327 F.R.D. 17, 20 (D.D.C. 2018) (citation modified).[5]

Finally, because Fort Myer's motion represents its first request to amend, there is no "repeated failure to cure deficiencies by amendments previously allowed." *Foman*, 371 U.S. at 182; *see also* Def.'s Opp'n 8 n.1. Thus, each *Foman* factor weighs in Fort Myer's favor.

Williams separately invokes Rule 6(b) to argue that Fort Myer "failed to state any reason of excusable neglect" that would justify an extension of time. Pl.'s Opp'n 4 (citation modified); *see* Fed. R. Civ. P. 6(b)(1)(B). But any lack of excusable neglect does not bar the Court from granting leave to amend under Rule 15. Rule 6 merely allows a court to extend a party's time to act for good cause. *See* Fed. R. Civ. P 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time."). Rule 15, for its part, explicitly instructs that the Court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Therefore, in accordance with the *Foman* factor analysis, the Court will grant Fort Myer's motion to amend its answer under Rule 15(a).

For the foregoing reasons, it is

---

[5] Williams cites Fort Myer's refusals to settle or provide settlement counteroffers as evidence of bad faith or dilatory tactics. *See* Pl.'s Opp'n 4–6. But the Federal Rules of Civil Procedure "are not intended to impose settlement on unwilling litigants." *In re Eddy*, 957 F.2d 911 (D.C. Cir. 1992) (unpublished table decision) (per curiam) (citation modified).

11

**ORDERED** that the plaintiff's Motion for Summary Judgment, Dkt. 37, is **DENIED**.  It is further

**ORDERED** that the defendant's Motion to Amend Answer, Dkt. 39, is **GRANTED**.

**SO ORDERED.**

September 30, 2025

DABNEY L. FRIEDRICH
United States District Judge